## Christine T. Egan, Appellee, v. W. Bradshaw Egan, Appellant.

### Gen. No. 31,313.

1. APPEAL AND ERROR—*when certificate of evidence is necessary.* On appeal from an order awarding alimony *pendente lite,* the Appellate Court will not presume in the absence of a certificate of evidence, and in the absence of the evidence taken before the master, that the evidence taken before the chancellor warranted the findings of facts recited in the order.

2. MASTERS AND COMMISSIONERS—*attaching evidence as requisite to report.* Evidence taken before a master should be attached to his report and brought up with it so that the chancellor can determine exceptions made to the master's findings.

3. EQUITY—*how chancellor should obtain evidence further than that taken before master.* If the chancellor believes that further evidence should be heard than what was had before the master in a suit for separate maintenance, the matter should be re-referred therefor.

4. EQUITY—*chancellor's considering master's report with new evidence before himself as error.* It is error for a chancellor to consider a master's report, which means findings without evidence, in conjunction with new evidence before himself.

Appeal by defendant from the Circuit Court of Cook county; the Hon. JOHN R. CAVERLY, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1926. Reversed and remanded. Opinion filed June 13, 1927.

CHARLES E. ERBSTEIN and BENJAMIN B. DAVIS, for appellant.

Silber, Isaacs, Silber & Woley, for appellee; Martin J. Isaacs and Clarence J. Silber, of counsel.

Mr. Presiding Justice Taylor delivered the opinion of the court.

This is an appeal by the defendant, W. Bradshaw Egan, from a decree of the circuit court, ordering him to pay to the complainant, Christine T. Egan, his wife, $1,000 a month, as temporary alimony.

On May 19, 1926, the complainant filed a bill of complaint, in which she alleged, among other things, that she and the defendant were married on November 28, 1908, and lived together as husband and wife until December 27, 1924; that he abandoned her without fault on her part, and has since refused to live with her; that there was one child, a boy, who is now 13 years of age, born of their marriage, and who is now in her custody and under her care.

It is further alleged in the bill of complaint that the defendant owned $300,000 worth of real and personal property, and that his income was, at least, $50,000 a year.

The bill prayed that the defendant be compelled to make proper provision for the separate maintenance and support of the complainant and their child.

On the same day, the complainant filed a petition, asking for a reasonable sum for her support and maintenance, and that of her child, pending the final determination of the separate maintenance suit, and that she be awarded a reasonable sum for court costs and counsel fees. The petition further set forth that the defendant is the owner of property in excess of $300,000; that he is vice president of R. E. Wilsey & Company, engaged in the investment securities business; that his income aggregates in excess of $50,000 a year; that the defendant is 45 years of age, and able to take care of and support his family in the condition in which they have been accustomed to live; that about

the time the defendant abandoned the complainant, he represented to her that his income was only $20,000 a year; that he was willing to pay her, for the support of herself and child, one-half of his income; that believing those representations, "she agreed to accept such sum for the support of herself and child"; that he has discontinued paying even that amount, and since the first of March, 1926, has paid to her only the sum of $500; that in order to harass and annoy her, and force her to consent to a divorce, he notified all tradesmen with whom she had been accustomed to deal, disclaiming any responsibility for her indebtedness, even for necessities, and had so impaired her credit that it was difficult for her to secure credit for the usual necessities of life. The petition prayed that she be awarded a reasonable sum for the support and maintenance of herself and their child, pending the final determination of the separate maintenance cause, and that she be awarded a reasonable sum for cost of litigation and employment of counsel.

On June 15, 1926, the court referred the petition of the complainant "for an allowance *pendente lite* for maintenance and alimony," to Master in Chancery Bicek, "to hear such testimony as either party may produce  *  *  *;  that he investigate the income of the defendant from the date of the separation of the parties and that he report his recommendation as to alimony and solicitor's fees as speedily as possible. And the defendant voluntarily agreeing to pay the complainant within five days $1,000, the motion for alimony is hereby continued until the Master reports."

On June 23, 1926, the defendant filed an answer to the bill of complaint. By the answer, the defendant denied that he abandoned the complainant without fault on her part; denied that she faithfully discharged her duties as a wife; denied that he is possessed of real and personal property to the value of more than

$300,000, or that his annual income is $50,000 and denied that the complainant is entitled to the relief she prays.

On July 28, 1926, the report of the master dated July 19, 1926, was filed. The master found that the property and assets of the defendant, as disclosed by the evidence, amounted to, approximately, $173,405, and, the property and assets of the complainant, to $21,075; and that the income of the defendant, as disclosed by his income tax return for the years 1921 to 1925, both inclusive, amounted to $140,238.31. The master recommended that during pendency of the suit complainant be permitted to remain in possession of certain property in Highland Park, which was their homestead, and that pending final determination of the separate maintenance suit, the defendant be ordered to pay to her on August 1, 1926, and each month thereafter, the sum of $1,000 for the support and maintenance of the child and herself, and that he pay to her the sum of $2,500 for temporary solicitor's fees.

Attached to the master's report are certain objections, both on behalf of the complainant and the defendant.

Attached to what purports to be the original report of the master, and following the objections, there appears a supplemental report dated July 26, 1926. The supplemental report recites that certain objections, both on behalf of the complainant and the defendant, to the original report were allowed, and "that pending the final determination of this cause, the defendant be ordered to pay to the complainant the sum of $800.00 per month for the support and maintenance of the complainant and her child," and that the defendant be ordered to pay $2,500 for her temporary solicitor's fees in the prosecution of her suit.

The record shows that on August 6, 1926, the complainant filed five exceptions of the master's report, one of which charges that the amount allowed for tem-

porary alimony is less than is justified by the testimony; the others pertain to the defendant's income and to the computation of the master being based upon the defendant's income tax reports instead of the books of his company.

The record shows that on August 7, 1926, the defendant filed four exceptions, one of which charges that the recommendation of $800 a month is unjust, excessive and contrary to the evidence; the other three pertaining to certain accounts and the allowance of solicitor's fees.

On August 27, 1926, the order, from which this appeal is taken was entered. It recites, among other things, that the matter coming on again for hearing, "and the Master now having made his report and the court having considered said Master's report and other evidence in said court," and it appearing that the defendant was vice president and a director of R. E. Wilsey & Company, and that his compensation was based upon commissions; that for the year 1924 his earnings amounted to $39,003.13, and that he withdrew from the firm $42,139.50; that for the year 1925 his commissions amounted to $50,266.25; that his dividends amounted to $15,000, and total earnings for that year, $65,314.79; that for the first five months of the year 1926, his commissions amounted to $10,396.24, which, with dividends and other currency received, made his total earnings for that period $27,830.68; that during the same period of time, he withdrew from the firm $33,306.97.

And it appearing to the court that the defendant had been accustomed to pay to the complainant for her and her child's maintenance, and the expenses of the household, between $1,000 and $1,500 each month, and it appearing to the court that the complainant was entitled to maintain her status in life as it existed prior to the separation of the litigants, and in order to do so, requires a monthly payment of $1,000, and

the court finding that the defendant was able to pay that amount per month, "It is ordered that the defendant pay to the complainant, as alimony *pendente lite,* the sum of $1,000.00 per month."

The order also provided that $2,500 be paid to the complainant for solicitor's fees, and recited that there was no objection to that amount.

The order also provided that the complainant continue to occupy the homestead until the further order of the court.

The record shows that on August 28, 1926, on motion. of the solicitor for the complainant, the exceptions of the complainant to the report of the master were sustained.

This appeal is taken by the defendant from the above mentioned order of August 27, 1926, allowing the complainant $1,000 a month.

It is contended on behalf of the defendant that the order requiring the payment of $1,000 per month as temporary alimony is excessive, and that the order is erroneous "in not providing that the payments under it shall be conditioned upon the defendant's failure to pay under the agreement of the parties and for the application of so much as was paid under the order, upon said agreement."

It is contended by the complainant that as the testimony taken before the master, and certain exhibits were not preserved and retained with his report; that as there is' no certificate of the evidence taken before the court at the time of the entry of the order, although. the order itself recites that evidence was heard by the court; that as the court heard evidence in open court; that as findings of fact were recited in the order, it will be presumed that they were warranted; that if the defendant was dissatisfied with the findings of fact on which the decree was based, he should have brought the testimony and evidence to this court, and that, failing to do so, this court is bound to presume the evi-

dence warranted the findings of fact as recited in the decree.

As shown in the history of the proceedings set out above, the petition for allowance of temporary alimony was referred to a master in chancery. The order of reference was "to hear such testimony as either party may produce * * *, and that he report his recommendation as to alimony * * *." The record shows that, pursuant thereto, hearings were had before the master; that testimony was taken and exhibits introduced; that he made an original and a supplemental report and certain recommendations; that objections thereto were filed on behalf of the respective parties, and were overruled; and that the reports were finally filed, but contained none of the evidence which was taken before the master at the hearings which took place before him.

When, therefore, the matter came up before the chancellor on exceptions to the master's reports, and he considered the master's reports, and, as recited in the order of August 27, 1926, "having considered said Master's report and other evidence in said court," he made specific findings of the earnings of the defendant for the years 1924 and 1925, and part of the year 1926, and findings in regard to the amount which the defendant had been accustomed to pay the complainant for her and her child's maintenance, and the expenses of the household, and that she was entitled to maintain her status in life as it existed prior to their separation, and to do so it would require a monthly payment of $1,000, and that the defendant was able to pay that amount per month, and then ordered that the alimony *pendente lite* be fixed at $1,000 per month, are we entitled to presume, in the absence of a certificate of evidence, and in the absence of the evidence taken before the master, that the evidence taken before the chancellor warranted the finding of facts as recited in the order? We do not think so.

The master's original report recommended $1,000 per month, and his supplemental report recommended $800 per month, but the order of the court fixed the amount at $1,000 per month. The record shows that, on motion of the solicitor for the complainant, the exceptions of the complainant to the report of the master were sustained, and that one of those exceptions was to the effect that the recommendation of the master that the sum of $800 a month be allowed for temporary alimony was less than was justified. The decree informs us that the chancellor, in changing the amount from $800 per month, as recommended by the master, to $1,000 per month, considered the master's report and other evidence taken before himself. That was improper. The evidence taken before the master should have been attached to the report, and brought up with it, so that the chancellor might determine the exceptions made to the master's findings, and if the chancellor were of the opinion that further evidence should be taken, the matter should have been re-referred for that purpose. It was error for the chancellor to consider the master's report, which means considering his findings without the evidence, in conjunction with new evidence taken before the chancellor, himself. *Central Illinois Public Service Co. v. City of Sullivan*, 294 Ill. 101; *Central Illinois Public Service Co. v. Swartz*, 284 Ill. 108.

Accordingly, the interlocutory decree of August 27, 1926, is reversed and the cause remanded.

*Reversed and remanded.*

O'Connor and Thomson, JJ., concur.